## Keisler's Estate.

*Wills—Probate—Undue influence—Evidence.*

In a proceeding to determine the validity of a will it was alleged that the will was procured by the undue influence of the sister of testatrix, who was the principal beneficiary. The evidence showed that the testatrix had complained of the neglect of her children, and that shortly before her death she went to live with her sister in another county. While residing with her sister testatrix expressed a desire to change a former will, and the sister telephoned to a lawyer to come to her house, and at testatrix's request she wrote to a lawyer who had possession of the former will to send it to testatrix. The sister was not present when the new will was executed or at any discussion relating to it. There was no evidence that she used any influence or persuasion upon the testatrix. She was uniformly kind to testatrix, and the latter frequently expressed her satisfaction at the kind treatment and good care which she received from her sister. The sister denied the charge of undue influence and testified that testatrix made the suggestion in the first place as to her change of residence. *Held,* that the evidence was insufficient to sustain a finding that the will had been procured by undue influence.

Argued April 10, 1905.   Appeal, No. 191, Jan. T., 1904, by Sally A. Merwine, from decree of O. C. Luzerne Co., No. 414, of 1901, dismissing appeal from register of wills in Estate of Hannah B. Keisler, deceased.   Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and ELKIN, JJ.   Reversed.

Appeal from register of wills.   Before FREAS, P. J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in dismissing appeal from register of wills.

*D. L. Rhone,* with him *H. J. Kotz, Cicero Gearhart* and *R. L. Burnett,* for appellant, cited : Caughey v. Bridenbaugh, 208 Pa. 414.

*John M. Garman,* with him *William I. Hibbs* and *S. E. Shull,* for appellees, cited : Robinson v. Robinson, 203 Pa. 401 ; Sharpless's Estate, 134 Pa. 250 ; Wilson's App., 99 Pa. 545.

OPINION BY MR. JUSTICE POTTER, Oct. 9, 1905 :

A will of Hannah B. Keisler was probated September 25, 1901, by the register of wills of Luzerne county and letters

testamentary granted to Milton Kresge, the executor named therein. On June 25, 1903, an appeal from the probate was taken by Sally A. Merwine, and after issue joined and hearing before the orphans' court the appeal was dismissed. This appeal is taken by the appellant below from the decree of the orphans' court dismissing the appeal from the register.

There are nineteen assignments of error, the last of which specifies as error, the dismissal of the appeal.

From the facts as recited in the opinion of the court below it appears that the will which was admitted to probate in Luzerne county, was dated May 29, 1901. That testatrix afterwards was taken to Stroudsburg, Monroe county, where she remained until her death upon September 25, 1901. And that in the meantime, another will was executed by testatrix on September 14, 1901. In this second will she recites the fact that she had removed to Stroudsburg with the intention to make her home there for the remainder of her life. She directs that she be buried in the cemetery at Stroudsburg, and that the body of her deceased husband be removed from West Pittston and interred at Stroudsburg. She gives her personal property to her three children and a granddaughter, and directs that her real estate should be sold and that her debts, funeral expenses, purchasing of cemetery lot, tombstone, also amount to be paid to the cemetery and the expenses of settling her estate, should be paid out of the proceeds, and only the balance was given to her sister, Mrs. Merwine. The finding of the court below that she gave her real estate to the appellant is therefore inaccurate to this extent.

Although the appeal is from the probate of the last will executed at West Pittston, the actual question before the court was whether the will dated September 14, 1901, and executed at Stroudsburg, was the last will and testament of the testatrix. The court found as follows:

1. That the legal residence or domicile of Hannah B. Keisler at the time of her death was at West Pittston, Luzerne county, and the register of wills of Luzerne county had jurisdiction.

2. That the testatrix possessed testamentary capacity at the time of the execution of the Stroudsburg will.

3. That the Stroudsburg will was procured by undue influ-

ence, exercised over testatrix by Sally A. Merwine, the appellant, and was therefore invalid and of no effect.

On the first question, that of domicile, the court having found as a fact, that the testatrix had no fixed intention to change, and that her legal residence at the time of her death was at West Pittston, we will not disturb it. There was evidence to support this finding.

The question of testamentary capacity is not raised by the assignments of error, as the ruling of the court below upon that point was in favor of the appellant. The main question raised by this appeal is that of undue influence. There is no evidence of any influence exerted directly by the appellant upon testatrix to make a will in her favor. The only part she took in procuring the making of the second will was to telephone to a lawyer to come to the house and see Mrs. Keisler, after the latter had expressed a desire to change her former will. She also wrote to the lawyer who had drawn the first will and had it in his custody, requesting him to send it to Mrs. Keisler. This she did at the latter's request. She was not present when the Stroudsburg attorney, Mr. Gearhart, saw the testatrix and discussed with her the making of a new will, nor when his stenographer, Miss Shiffer, took her instructions as to how the will was to be drawn, nor when the will was executed. There is no evidence to show that appellant was informed before the will was made, that any portion of the estate was to be left to her. There was evidence that Mrs. Merwine, who was a sister, was able to influence the testatrix in her conduct, but none of the witnesses testified that she did exercise any undue influence upon her. The appellees do not in their argument point out any such testimony. The evidence goes no further than such as this :

Miss Hattie Dennison, who nursed Mrs. Keisler at West Pittston, testified that Mrs. Merwine visited her (Mrs. Keisler) at that place, and came after her there and brought her away. She was brought to Stroudsburg August 1 by Mrs. Merwine and witness remained with her until August 24. · Her mind was very much affected at that time and she was easily influenced by some people.

Later the same witness was recalled and testified : " Mrs. Merwine had the same effect on testatrix that I had when I first

went there.    Testatrix  was  a woman whom by being kind to,
you could take over to your side ; and the ones that were with
her  were  the  ones  that  would have her to do  whatever  they
wanted her to do.    Mrs.  Merwine  was  always  very  kind and
very lovely to Mrs. Keisler, and never crossed her in any way.
She  sent  her  very lovely letters and beautiful flowers  and  in
every  way was  kind to her, and Mrs. Keisler, as her condition
grew weaker, became more fond of Mrs. Merwine."

There  was  nothing  in  this testimony to indicate anything
more  than  a  proper  display of  sisterly affection.   Appellant
also called a number of witnesses who testified that both before
and after she left West Pittston, Mrs. Keisler spoke to them of
the kind treatment and good care she received from Mrs. Mer-
wine, of how comfortable she was at her house, and how pleased
she was to be with her mother and sister.   She also complained .
that her children had neglected her.

Mrs. Emma Coleman, a neighbor of West Pittston, testified
that shortly before she went to Stroudsburg, testatrix complained
to her of lack of care and said : " I wish if only my sister would
come  up,  I  know  that if Sally  would  come  up  she would
care for me.   I will give it to Sally if Sally takes good care of
me, for their ain't none of their father's here, says she ; he left
me without anything but my three children, and if my children
take care of me I will give them first chance and if Sally will,
I shall give it to Sally."           `

This was before  the  undue influence is alleged to have been
exerted by Mrs. Merwine.

The appellant herself was examined and denied the charge of
undue  influence.    She  said  that  the  suggestion  that  Mrs.
Keisler  should  go back with  her to Stroudsburg was  made in
the first place by Mrs. Keisler herself.

Without burdening this opinion with further reference to the
testimony in detail, it is  sufficient to say that it presents nothing
which  satisfies  the  legal  definition of undue influence.    The
law  on  this  subject  has  been  so  often  considered and  is  so
thoroughly settled that it is unnecessary to cite cases at any
length.   The  opinion of the trial judge in Caughey v. Briden-
baugh, 208 Pa. 414, approved by this court, covers  the  entire
ground.   Under that case, and  the  decision in  Masterson v.
Berndt, 207 Pa. 284, the  evidence  in  the present case fails  to

show the exercise of any undue influence by the appellant, for the purpose of procuring the making of a will in her favor. It is true there was a change of mind upon the part of the testatrix, but this was not in itself any evidence of undue influence. We said in Slater v. Slater, 209 Pa. 194, " Had there been evidence of undue influence, the change of purpose might have had a strong corroborative bearing. But the change is not of itself evidence of undue influence. A change of mind is the right of every testator and by itself is not evidence of anything. It is only when a basis of evidence of undue influence is laid that the inquiry as to the change becomes relevant."

In the latest reported case on the subject, Allison's Est., 210 Pa. 22, a decree refusing to award an issue d. v. n. was affirmed on the opinion of the court below, in which latter opinion it was said : " A jury should not be permitted to guess that there was testamentary incapacity at the time the will was executed, or that the will was the result of undue influence because they might think that a former will had made a better disposition of the testator's property than the will contested, and that influence had been brought to bear on him to make the change. Testamentary incapacity or undue influence must be proved before a will can be legally set aside."

And in the case of Robinson v. Robinson, 203 Pa. 401, which was cited and apparently relied on by the court below, the following language is quoted (p. 435) from the charge of the trial judge, and approved in the opinion of Justice DEAN, as a correct statement of the law : " A son may importune his mother to make a will in his favor. . . . He has a perfect right to do it, and if the only effect was to move her affections, or sense of duty, or judgment, he has a perfect right to do it. But if these importunities were such as the testator had not the power to resist, and yielded for the sake of peace and quiet, or escaping from serious distress of mind ; if they were carried to a degree by which the free play of testator's judgment, or discretion or wishes were overcome, it is undue influence. He can coax her, but he must not drive her, either by moral coercion or physical force."

The nineteenth assignment of error is sustained, as is the eighteenth, seventeenth and sixteenth ; so also is the first, second and fourth.

The decree of the court below is reversed at-the cost of the appellees, and it is ordered that the record be remitted to the court below, for further proceedings in accordance with this opinion.