## *In re* WILL OF FRISS.

No. 3809.   Opinion Filed December 8, 1914.

Rehearing Denied January 22, 1915.

1. **WILLS—Ambiguous Recitals—Construction.** In construing wills, it is a well settled rule that where an absolute estate or a certain specific interest is given in one or more provisions in reasonably clear and unambiguous language, this interest or estate will not be cut down, affected, impaired or qualified in another provision by inference or an inaccurate recital of, or reference to its contents in other parts; and such gifts will be impaired or cut down only when such language tending to affect same is clear and certain as the language creating the gift.

2. **WILLS—Construction of Ambiguous Terms.** On October 26, 1906, Maria F. Friss made and executed her will, which, so far as material here, reads: "To my son Myron, I give the house on Pottawatomie Street, to George, I give the house on Broadway; and to Charlie, I give the house on Eighth Street, and to my daughter, Emma, I give the proceeds from the house on Sixth Street after the repairs and taxes and insurance are paid while she is William Anderson's wife. When she becomes a widow, then the house is to be hers. All other property is to be turned into cash and divided in such a way every child gets an equal amount. The houses and lots on which they stand are to be appraised and each child receive money enough to make them equal, but Emma is not to have possession of hers while she is William Anderson's wife." The property owned by the testator at her death, other than specifically mentioned, was of the appraised value of $11,800. **Held:** That title to the property specifically mentioned vested, unconditionally, in the three devisees first named; that it was intended that title to the property situated on Sixth Street, being lots 10 and 11, block 33, Maywood addition to Oklahoma City, should be held in trust by the administrator for Emma, she to have all rents, subject to the payment of insurance, repairs and taxes; and in the event she should become a widow, title should vest in her absolutely. Held, further, that it was the intention of the testator that the residue of the property should be sold and the proceeds divided between the deives, each to receive an amount so as to equalize as nearly as possible the gifts, taking as a basis the appraisement of the property specifically mentioned.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*

*W. R. Taylor, Judge.*

Petition of George Friss for a construction of the will of Maria A. Friss. Judgment of district court reversed.

*Flynn, Chambers, Lowe & Richardson,* for petitioner.

*Everest, Smith & Campbell,* for respondents.

RIDDLE, J.  Plaintiff in error will be referred to as petitioner, and defendants in error as respondents.  This proceeding in error is prosecuted from a judgment of the district court of Oklahoma county, denying the relief sought by petitioner.  Maria F. Friss executed her will on October 26, 1906, and named as beneficiaries therein petitioner, also her sons, Myron, Charlie, and her daughter, Emma.  On the 14th day of September, 1910, petitioner, George Friss, instituted proceedings in the county court for the purpose of having the court construe and give effect to the will involved and to distribute the property in accordance with the prayer of petitioner.  The county court granted the relief prayed, and the administrator of said estate, and Myron Friss, one of the heirs, appealed to the district court, where, upon a trial *de novo,* judgment was rendered denying the relief prayed, and ordering the property, both real and personal, sold and the proceeds distributed equally between the beneficiaries named. This proceeding in error is to reverse the judgment of the district court.

The cause was submitted and heard by the court upon the following agreed statement of facts:

"In lieu of evidence, it is hereby admitted that the instrument marked exhibit 'A' to this evidence is the last will and testament of Maria F. Friss, now deceased, and that the same has been probated and letters of administration issued to Myron F.

Friss, there being no contest of the will and the time for contesting the same having expired.

It is further admitted that the property devised in said will to 'my son Myron' named as the house on Pottawatomie street is lots 5 and 6, block 24, south Oklahoma addition to Oklahoma City, appraised in the inventory, which is marked exhibit 'B' and considered in evidence, at the sum of $3,500; that the property referred to in said will as being given to George is lot 3, block 12 in Oklahoma City, appraised in the inventory at $11,000; that the property named in said will as given to Charlie, the house on Eighth street is lots 9 and 10, block 19, Maywood addition to Oklahoma City, appraised at $3,200; that the property named in said will as given to the daughter Emma Anderson is lots 10 and 11, block 33, Maywood addition to Oklahoma City, appraised at $4,250.

It is further agreed that the inventory introduced in evidence marked exhibit 'B' shows all property in said estate except the farm in Nebraska and that the property in Nebraska sold for approximately $10,800 cash. It is also admitted that the property not mentioned in the will in Southtown and which is appraised at $800 sold for $1,000.

For the purpose of this case only it is further admitted that the expense of administration was about $1,500.

It is admitted that the valuations of the several properties referred to in the will at the date of said will were approximately as follows:

The Broadway property described at lot 3, block 12, city property, $7,000.

Lots 10 and 11, block 33, Maywood addition referred to as the Sixth street property, $3,750.

Lots 9 and 10, block 19, referred to as the Eighth street property, Maywood addition, $2,700.

Lots 5 and 6, block 24, South Oklahoma addition, $3,000.

It is further admitted that the property inventoried as lots 21 and 22, block 8, South Oklahoma addition, was vacant at the

time of said will; that after the making of the will the testratrix made improvements on said property and that the house was worth $450.

It is not admitted as to whether the property in Nebraska had increased or decreased from the date of said will.

It is further admitted that the movant, George Friss, has not paid the estate notes listed in the inventory.

### Exhibit 'A'

"Oklahoma City, Oklahoma, Oct. 26, 1906. Being in my right mind and usual health, I write this article concerning the division of my property. To my son-in-law, William O. Anderson, I give Five Dollars in cash; to my son, Myron, I give the house on Pottawatomie street; to George, I give the house on Eighth street, and to my daughter, Emma, I give the proceeds from the house on Sixth street after the repairs and taxes and insurance are paid while she is William Anderson's wife, when she becomes a widow, then the house is to be hers. All other property is to be turned into cash and divided in such a way every child gets an equal amount. The houses and lots on which they stand are to be appraised and each child receive money enough to make them equal, but Emma is not to have possession of hers while she is William Anderson's wife. (Signed) Maria F. Friss."

The only question involved is the construction of this will. The primary rule in construing wills is to ascertain the intention of the testator in making the same. This intent must be ascertained by the language employed in making the will, except in cases where the language is ambiguous or uncertain, and fails to show clearly the intent of the testator, in which case the court may take into consideration the circumstances and conditions surrounding the testator and his or her relations to those named as beneficiaries, their affections, or lack of affections, the conditions of his or her family, the amount and character of property, the estate or property devised, their manner of living, the means provided, as well as their culture and happiness; but where the

testator's intention is plainly expressed in the will, the court cannot deduce from the surrounding circumstances an intention different therefrom. The will should be construed so as to give all parts effect, if possible. Counsel for petitioner makes the following contentions:

"(1) That each one of the devisees is to receive the property specifically devised in the will, which would result in George W. Friss being decreed to be the owner of Lot 3, in Block 12, Oklahoma City, Oklahoma. (2) That the property specifically devised is to be appraised to ascertain the value thereof in order to properly distribute the residue of the estate. (3) That the property other than that specifically devised is to be turned into cash and divided in such a manner that it will equalize, if possible, the various gifts or specific devises."

Counsel for appellees contend that the provision wherein the testator directs all other property turned into cash and divided in such a way every child will get an equal amount, and after directing that the houses and lots be appraised and each child receive enough money to make said gifts equal, shows that the paramount intention of the testator was to equalize the gifts, and if necessary to do so, that all the property should be converted into cash. If this contention may be sustained, and at the same time effect be given to each word and sentence of the will, it would then come within the rule of construction, *supra.* On the other hand, if to so construe the will would render, ineffective or destroy certain parts, then such construction should be avoided, especially if another would render effective all parts of the will. They say if their contention is not correct, then there would have been no reason for the testator to have directed an appraisement. We are unable to concur in this view. It was the houses and lots specifically bequeathed which were required to be appraised, and for the very good reason to fix a value as a basis for equalizing the gifts, by distributing the proceeds of the residue of the property.

It is a well-settled rule of construction, as applied to wills, that where an absolute estate or a certain specific interest given is reasonably clear and in unambiguous language in one part, section or clause of the will, this interest or estate will not be cut down, affected, impaired or qualified in the same or a subsequent provision by inference or argument, or an inaccurate recital of or reference to its contents in other parts of the will; and such estate so vested will be held to be qualified or cut down only by words equally clear and distinct as the words constituting the devise, whether such words are contained in the same or a separate provision. That this rule is sound and in accord with reason and the great weight of authority will be seen by examination of the text-books and adjudicated cases, a few of which we cite: 2 Redfield on Wills, p. 418; 2 Underhill on Wills, sec. 689; 30 Am. & Eng. Encyc. of Law, 748; Paige on Wills, sec. 572; 40 Cyc. 1404 and 1415; *Rosembom v. Rosembom,* 81 N. Y. 336; *Clark v. Leupp,* 88 N. Y. 299; *Sigle's Estate,* 213 Pa. 13; *Moran v. Moran,* (Mich.) 106 N. W. 306; *Platt v. Brannon,* (Colo.) 81 Pac. 755; *Sevier v. Woodson,* (Mo.) 104 S. W. 1; *In re Gannis.* 142 Cal. 1; *Holmes v. Minor,* 247 Ill. 566; *Settle v. Shafer,* 220 Mo. 561; *Hayes v. Hayes,* 21 N. J. Eq. 265; *In re Weigland.* 211 Pa. St. 297; *Walker v. Alberson,* 87 N. C. 55.

Applying this rule to the language contained in the will under consideration, we are of the opinion that the construction of said will by the county court was correct. Had the testator closed her will at the second period after the word "hers," no judge and no person, whether lawyer or layman, would entertain any doubt that she intended to bestow absolutely upon the donors named, except her daughter, Emma, the property described in connection with and following their names respectively. The question then arises: Are there any words used subsequently, showing to a reasonable certainty an intent to in any way affect or qualify the estate thus bequeathed? In other words, do we find any words as clear and certain, tending to affect or destroy

the gifts as the words or language employed in making the gift? The language, "all other property is to be turned into cash and divided in such a way every child gets an equal amount," to our minds, indicates to a reasonable certainty the intention of the testator to cause to be converted into cash all the property remaining, not specifically mentioned, and that the proceeds should be used in making the specific gifts as nearly equal as possible. The purpose of the testator in requiring an appraisement of the houses and lots which she had specifically mentioned in making the gifts was to secure a basis for equalizing the gifts. That this language shows this to have been her intention is too clear to admit of any reasonable doubt. The language used in the last two paragraphs in the will and which we are now discussing strengthens the conclusion that the gifts were absolute and unconditional. This construction gives force and effect to each and every part of the will, and harmonizes each provision with the other. To give the language of the will the construction placed on it by the district court destroys the first part of the will, wherein specific gifts are made and in our judgment, is not warranted. To do this would, in effect, be making another will and wholly defeating the intention of the testator. It is reasonably clear that the testator intended to vest an absolute title in lot 3, block 12 in petitioner, George Friss; that she also intended to vest an absolute title in each of the other devisees to the property specifically mentioned in connection with their names respectively, with the exception of her daughter, Emma. We are of the opinion that it was the intention of the testator that after the repairs, taxes and insurance had been paid on the 6th street property, which, under the agreed statement of facts consists of lots 10 and 11, block 33, Maywood addition to Oklahoma City, the rents are to go to her during the time that she is the wife of William Anderson, and the title to vest in the administrator in trust for her use, and in the event she should become a widow, the title to said property to vest in her absolutely; that all the residue of

said property belonging to the testator at the time of her death should be converted into cash, and the proceeds thereof used to equalize as near as possible the gifts made to the respective par- ties, using as a basis the appraisement made, as shown by the agreed statement of facts.

It follows from the foregoing that the judgment of the dis- trict court must be reversed, with direction to set aside said judg- ment and cause to be entered a judgment in accordance with this opinion.

All the Justices concur.