COBB et al. v. NEWMAN et al.

No. 33391. March 8, 1949.

Rehearing Denied May 3, 1949.

*205 P. 2d 858.*

Guy L. Andrews, of McAlester, for plaintiffs in error.

Utterback & Utterback, of Durant, for defendants in error.

. GIBSON, J. This action was instituted by Louesa Newman, joined by her husband, Nelson Newman; Pauline Palmer, joined by her husband, W. S. Palmer; and Mary Inez Temple, joined by her husband, W. H. Temple, as plain-

tiffs, against Antonia Cobb and her husband, J. R. Cobb; L. C. Kuyrkendall and his wife, Ione Kuyrkendall, and O. A. Kuyrkendall and his wife, Josephine Kuyrkendall. Therein is sought a judicial determination of the respective interests of plaintiffs and defendants in the mineral estate in lands, also judgments for plaintiffs' alleged proportionate parts of money received by one of defendants as bonus for oil and gas lease, covering the mineral interest in a part of the lands involved, and other relief. Later, D. O. K. Land and Cattle Company, an Oklahoma corporation, was made a party defendant by order of court. Plaintiffs were awarded judgment and the defendants, other than O. A. Kuyrkendall and wife, prosecute the appeal. The parties to the appeal will be referred to herein as they appeared in the trial court.

The original parties to the action, other than those named as spouses, are children of J. O. Kuyrkendall, who died testate. The mineral interests involved attach to lands that were devised in severalty to the children, and the question in issue involves, among other things, a construction of the will. The will was duly probated in the county court of Atoka county, and decree of distribution was entered on May 30, 1932.

Testator died seized in fee of several tracts of land and possessed of the controlling stock in said corporation which had extensive holdings in lands which were devoted primarily to stock raising and included two ranches.

The corporation was capitalized at 1,200 shares of the par value of $25 each. Testator was owner of 879 of the shares. Defendant O. A. Kuyrkendall, who was manager of the corporation during his father's lifetime, succeeded to the presidency thereof upon his father's death, and was one of the executors of the will, and owned 316 shares. And plaintiff Nelson Newman, son-in-law of testator, who was secretary-treasurer of the corporation, owned 5 shares.

Item III of the will provides:

"I direct that all my just debts be paid out of my estate, and if there be not sufficient money on hand at the time of my death to pay same, then, I direct that each of the legatees hereunder bear an equal share in the payment thereof. To this end I direct that all real property herein devised, which is revenue bearing in the way of rentals and all my stock in D. O. K. L & C. Co., be kept intact by my hereinafter named executors and the revenues and rentals therefrom, and the dividends arising from said stock in the D. O. K. L. & C. Company, after paying the taxes, expenses and upkeep of such property be applied to the payment of said indebtedness, and that after the payment of same, that said property be divided as herein specified.

"I desire it understood, however, that the above mentioned indebtedness is not meant to include mortgage indebtedness, against any of the lands herein devised, including ranch lands, nor are the above mentioned rentals to be revenue arising from farm lands."

Under Items IV to IX, inclusive, there is devised in severalty to the six children definite parts of the lands of which the testator died seized, and therewith is bequeathed to each devisee a definite number of the shares of stock, such bequests aggregating all of the stock of the corporation of which testator was possessed.

Item XIV is as follows:

"Whereas in this will I have given and bequeathed to my within named children, Louesa Newman, Antonio Cobb, Mary Inez Temple, Dr. L. C. Luyrkendall and O. A. Kuyrkendall certain lands and lots, and certain stock in the D. O. K. Land & Cattle Company, said stock conveying an interest in lands, Now as a part and parcel of said bequests, I desire to add the following conditions:

"At my death, my said within named children shall take said lands and stock

conveying an interest in lands herein bequeathed to them in fee simple including interest in lands of the D. O. K. Land & Cattle Company, as shown by the stock in said company herein bequeathed to them,

"Conditioned, that should oil, gas, or valuable mineral be discovered upon any of said land bequeathed to any of the above named children, should said oil, gas, or valuable mineral be produced, mined or sold or royalties paid thereon while said land is owned by any child or children above named, then in that event said oil, gas or valuable mineral shall be the property of all my said children above named and they shall participate, share and share alike in such gas, oil or valuable mineral and in all profits and royalties arising therefrom.

"Provided, that nothing in this condition herein imposed or the terms and conditions thereof, shall be understood or constructed to act as a restriction upon the sale of any of the lands described and bequeathed herein to any of my said children before the discovery or production of any oil, gas, or valuable mineral upon said land. That is to say, that before the discovery or production of any such oil, gas or valuable mineral upon any of the lands herein bequeathed, the child or children to whom such land is bequeathed are at liberty to sell or otherwise dispose of same, without restriction and convey good title thereto."

Under the decree of distribution, to which there was no objection and from which there was no appeal, the lands so devised were distributed to the devisees subject to the condition prescribed in Item XIV.

The devisees mutually agreed to abide the terms of the will and to cooperate in the attempt to effectuate the testator's intention. The indebtedness of the estate and that of the corporation, the main source of the estate's revenue, was such that extraordinary measures were required. In January, 1932, one of the ranches was sold. The amount realized therefrom was sufficient to retire the corporate indebt-

edness (except a note for about $13,000 to be mentioned later) the indebtedness of the estate and to declare a divident sufficient to enable the stockholders to retire the indebtedness that constituted charges upon the specific devises.

Stock certificates were issued to the distributees in accordance with their respective ownerships. And on July 2, 1932, at a called meeting of the stockholders of the corporation, at which all were present and participating, a resolution was unanimously adopted authorizing the corporation to execute deeds conveying in severalty to the devisees as tenants in common the mineral estate in the remaining lands of the corporation in accordance with the terms of the will.

By deeds bearing date of August 1, 1932, the corporation conveyed the mineral interests accordingly. All of the stockholders other than the grantee named therein executed each deed as co-grantor. And under date of August 11, 1932, the grantees entered into a written stipulation with the corporation whereby they severally covenanted to become personally liable to the extent of their respective ownership of any fund arising from the sale of leases or from oil and gas rentals or royalties on the mineral estate granted, for the payment of said $13,000 indebtedness, if corporate funds were not available therefor.

Pending the completion of the conveyances the corporation and stockholders joined in the execution of an oil and gas lease upon a part of the premises and after the completion a written stipulation was executed whereby all delay rentals and royalties under said lease were payable to the grantees according to their several interests and same were by them accepted.

In August, 1934, defendant Antonia Cobb executed an oil and gas lease on a part of the lands devised to her and for which she received a bonus of $480, which she retained. In 1936 said An-

tonia Cobb, desiring to execute an oil and gas lease on other lands so devised, requested the other devisees to join therein as lessors. This they refused to do unless she would account to them for their part of the bonus from the earlier lease and recognize their right to share in the funds to arise from the proposed lease. This she refused to do. No agreement being reached Antonia Cobb, by quitclaim, conveyed the land to her husband, J. R. Cobb, and thereafter joined him in the execution of a lease thereon. Thereafter, on July 23, 1936, plaintiffs instituted this action wherein there is sought a decree declaring that the devisees are the owners of equal interests in the mineral estate in the lands devised to each child, also several judgments against defendant Antonia Cobb for their ratable parts of the $480 bonus money received by her, and vacation of the deed executed by said defendant to her husband.

As grounds for the relief plaintiffs alleged the foregoing facts and, in addition thereto, that it was mutually understood and agreed that the effect of the conditions imposed by Item XIV was to entitle all the devisees to share jointly in the mineral rights in the land devised to one where they were of such value as to afford a profit through the leasing thereof, and that it was in order to accomplish a like result from the mineral interest in the corporate lands that the said conveyances were made, and that the conveyances were made in reliance upon said agreement.

Defendants Antonia Cobb and L. C. Kuyrkendall, by their original separate answers and cross-petitions, deny generally. Each also admits that the land taken by devise is subject to the condition imposed by Item XIV, but denies that the effect thereof was to disturb the devisee's ownership of the entire estate prior to discovery of oil or gas thereon. Each admits the execution of the alleged instruments but denies that they do or were intended to dispose of the minerals in the corporate lands according to testator's intent. Each charges that the instruments were prepared by others and were signed without careful consideration, and in reliance upon the false representation that they accorded with testator's will. Each prays that title to the devised land be quieted subject to the same condition; that the deeds conveying the mineral interests in the corporate lands be set aside; and new deeds, giving effect to the testator's intent, be required. Thereafter said defendants filed their separate amended answers and cross-petitions which are to the same effect as the originals except the allegations concerning the title passing under the devises and the force and effect of the conveyances of the mineral interest in the corporate lands. In the amended pleading it is charged that under the terms of the will the effect of each devise was to vest in the devisee a fee title absolute to which the condition sought to be imposed by Item XIV was repugnant and therefore void. And with reference to the corporate conveyances it is charged that the president and secretary of the corporation were without authority under the law to execute such conveyances; that the conveyances are void; and a decree adjudging such invalidity is prayed.

For answer the defendant corporation denies generally except to the extent the allegations of the petition are admitted. It admits the execution of the deeds and says same was done while laboring under the mistaken impression that the will was authority therefor; that the deeds were executed without any consideration moving to the corporation therefor; that at the time of the execution the corporation was indebted in excess of $13,000; that the stockholders were without authority to agree upon a division of the corporate property; that the deeds of conveyance are void and constitute clouds upon the title of the corporation to the mineral interests in the land; and prays a decree canceling the deeds and quieting

the title of the corporation. With reference to this answer and the questions involved on the appeal is the following statement in the brief filed on behalf of said corporation as plaintiff in error:

"I have been advised that the D. O. K. Land and Cattle Company, through its president, prefers not to urge its claims for affirmative relief and that they should stand neutral between the respective claims of stockholders, and to that extent ask the court to ignore that portion of its petition in error asking affirmative relief."

For answer to the cross-petitions plaintiffs filed general denials and plead estoppel.

The trial court awarded each of the plaintiffs Louesa Newman, Pauline Palmer, and Mary Inez Temple judgment in the sum of $80 and costs against Antonia Cobb, and decreed that the deeds conveying the mineral interest in the lands of the corporation were valid and binding upon the parties. The bases of the judgment are reflected in the following findings:

"I find that no fraud was practiced by Nelson Newman, the husband of Louesa Newman, and that each of said children of J. O. Kurykendall, deceased, entered into said agreement as to division of properties and carrying out the terms of their father's will freely and voluntarily.

"I further find from the will of the said J. O. Kuyrkendall that it has his intention and desire to divide his property equally between his six children, and that in carrying out this desire, he made this provision in order to bring about an equal distribution of such funds as resulted from increased values because of revenues from oil or prospective oil on either of said tracts.

"I further find that each of his six children so construed his will and followed that construction in the division of the mineral interests belonging to the intervenor herein.

"That in distributing said mineral interests between the children of the said J. O. Kuyrkendall it was in the nature of a liquidation of a portion of the assets of the said D. O. K. Land and Cattle Company and was valid and binding upon each of the parties thereto and the said intervenor, and that the deeds executed by the said D. O. K. Land and Cattle Company in conformity with said agreement and said resolution are valid and binding upon the parties thereto."

For reversal of the judgment the following propositions are urged: (1) That the deeds of the corporation purporting to convey the mineral estate in the corporate lands were either void or voidable at the instance of defendants and that it was error to not so hold. (2) That the conditions sought to be imposed by Item XIV of the will are repugnant to the grants made in the several devises and therefore inoperative. (3) That, considering the condition to be valid, the same does not operate upon the estate devised until oil or gas in kind has been discovered thereon.

In support of the first proposition emphasis is placed upon the fact that no consideration moved to the corporation and at the time of the conveyance the corporation was indebted for more than $14,000. As supporting the proposition Barnes et al. v. Lynch et al., 9 Okla. 156, 59 P. 995, is relied on.

Neither the question of consideration nor that of an existing indebtedness affords a criterion for testing the applicability of the doctrine invoked. The criterion here is whether there was a sale of trust property without the assent or ratification of the cestui que trust.

In paragraphs 5 and 6 of the syllabus in Barnes v. Lynch, supra, we held:

"5. The officers of a corporation having entered into an agreement between themselves to divide the assets of the corporation among themselves, and to merge the property of the corporation in their individual estates, the agreement was voidable at the option of the corporation, or at the instance of any stockholder, and since both the corporation and stockholders other than

the officers themselves who participated in the agreement, are here asserting their rights against the agreement, the whole transaction will be set aside and disregarded, and the deeds executed in pursuance of it are held to be void.

"6. It makes no difference what the consideration of deeds made in the execution of such an agreement was, even though it was adequate and full, and no actual injury was done to the stockholders. The principle will still be strictly adhered to that, against the dissent of any stockholder of a corporation or *cestui que trust* protesting and asserting his right in the matter, the rule which prohibits the trustee from dealing with his trust in such a manner as to appropriate it with and mingle it with his own estate, will be set aside and no inquiry on the subject will be permitted."

As supporting the doctrine so announced the court approves and quotes at length from the opinion in Hoyt v. Latham, 143 U. S. 553, 12 S. Ct. 568. Touching the principle involved, the effect of a conveyance within the operation of the rule and the rights of those in interest, it is therein declared:

" ' So jealous is the law of dealings of this character by persons holding confidential relations to each other, that the *cestui que trust* may avoid the transaction, even though the sale was without fraud, the property sold for its full value, and no actual injury to his interests be proven. It does not follow however, that the sale is absolutely void in the sense that the purchaser takes no title, which he can convey to a third person—a bona fide purchaser without notice; nor that the *cestui que trust* may not, upon notice of all the facts, ratify and affirm the sale by his acquiescence or silent approval.' "

Therein there is quoted from Marsh v. Whitmore, 21 Wall. 178, 88 U. S. 178, 22 L. Ed. 482, the following:

" 'The character of vendor and that of purchaser cannot be held by the same person. They impose different obligations. Their union in the same person would at once raise a conflict between interest and duty, and, constituted as humanity is, in the majority of cases duty would be overborne in the struggle . . . . The complainant could have treated the purchase made by the defendant as a nullity . . . . But unfortunately for him there is more in the case. He has adopted and approved of the transaction . . . . Had he at once denied the validity of the transaction, or by any declaration or proceeding indicated any dissatisfaction with it, or even refrained from expressions of approval, he would have stood in a court of equity in a very different position.' "

And following the last quotation it is said:

"So in Twin Lick Oil Co. v. Marbury, 91 U. S. 587 (23:329), it is said that the right of a corporation to avoid the sale of its property by reason of the fiduciary relations of the purchaser must be exercised within a reasonable time after the facts connected therewith are made known, or can by due diligence be ascertained, and that the determination of what is such reasonable time must be arrived at by a consideration of all the elements which affect that question."

The court's findings that there was neither fraud nor misrepresentation practiced and that all of the stockholders, with full knowledge of the facts, entered voluntarily into the conveyances with the intent and purpose to accomplish what was done are amply supported by the evidence. Under the circumstances, the defendant stockholders are not entitled, either in their personal capacity as parties to the conveyances or as stockholders whose rights as such may be impaired thereby, to such relief. The deeds recite valuable considerations. The parties thereto, in the absence of fraud, cannot be heard to defeat the legal effect thereof by showing an absence of consideration in fact. (22 C. J. p. 1169, sec. 1566.) To seek to avoid in their personal capacity is to invoke the aid of the court to undo their own voluntary act. And to do so as stockholders is to ask the court to undo an act to which they have given full assent.

In support of the second proposition it is urged that by the express terms of Item V there was devised to Antonia Cobb a fee-simple title to the lands involved without any limitation whatever; that the title so passing was one in fee is expressly recognized in Item XIV and further confirmed therein by recognition of devisee's power of disposal; and that it follows that the condition is inconsistent therewith. In support of the contention there is cited Tit. 84 O. S. 1941 §156, and In re Will of Friss, 45 Okla. 399, 149 P. 1176. The argument carries no appeal. In the first place, in order to establish in the devisee a fee title absolute under the language in Item V the intention of the testator must be gauged solely by the language of that item excluding the remainder of the will as evidence of such intent. Furthermore, construed together, there is neither repugnance nor inconsistency in the provisions of the said items, and there is nothing in the statute or authority cited to the contrary, in fact when so construed the devise comes within the purview of 60 O. S. 1941 §263, which is as follows:

"Where an absolute power of disposition, not accompanied by any trust, is given to any person to whom no particular estate is limited, such person also takes a fee, subject to any future estate that may be limited thereon, but absolute in favor of creditors, purchasers and incumbrancers."

It is a cardinal rule in the construction of wills that the intention of the testator is to be ascertained and given effect as far as possible. Tit. 84 O. S. 1941 §151; Dixon et al. v. Helena Society of Free Methodist Church of North America, 65 Okla. 203, 166 P. 114. And, in order to ascertain such intent, the several parts of the will are to be construed in their relation to each other as made mandatory by statute. Tit. 84 O. S. 1941 §155, is as follows:

"All the parts of a will are to be construed in relation to each other, and so as to form one consistent whole, if possible but where several parts are absolutely irreconcilable, the latter as to position must prevail."

Item XIV deals specifically with the same subject-matter as Item V. The language thereof is definite and clear. Considered together it is evident that the testator intended to convey a fee-simple title which was to be defeated in part upon the concurrence of two events, continued ownership by the devisee and occurrence of the contingency named. Such defeasance is not inconsistent with the devise of a fee because the existence of the fee in the devisee is a condition precedent to the defeasance prescribed. The estate so limited is no less a fee when so limited because it will last forever if the contingency does not happen. 69 C. J. p. 474, §1551, and cases cited. Such a fee has been variously designated as a defeasable fee, a determinable fee, a qualified fee, or a conditional fee (Id.)

Tit. 84 O. S. 1941 §156, relied on, provides:

"A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by an inaccurate recital of or reference to its contents in another part of the will."

In re Will of Friss, supra, deals only with a situation contemplated by the statute. Neither has application to the situation here involved. The conditions imposed by Item XIV are valid and the devises under Items V to IX, inclusive, are subject thereto. There was no error of the court in so holding.

The third proposition involves a construction of the language of Item XIV, the defendants contending that the contingency contemplated thereby is the actual discovery of oil, gas or other valuable mineral, and the plaintiffs contending that the contingency arose when utilization of the potential mineral value afforded a profit.

For convenient reference we quote again the language of the condition:

"Conditioned, that should oil, gas, or valuable mineral be discovered upon any of said land bequeathed to any of the above named children, should said oil, gas, or valuable mineral be produced, mined or sold or royalties paid thereon while said land is owned by any child or children above named, then in that event said oil, gas or valuable mineral shall be the property of all my said children above named and they shall participate, share and share alike in such gas,, oil or valuable mineral and in all profits and royalties arising therefrom."

As supporting plaintiffs' contention, it is urged that it was the testator's intention, and so recognized by all of the devisees, that the profits arising from the mineral values should be shared by all. And, as supporting the contention that plaintiffs were entitled to share in the bonus received by defendant Antonia Cobb, there is quoted from Dixon v. Mapes, 181 Okla. 376, 73 P. 2d 1131, the following:

"Where a will provides 'All receipts from oil, gas or other minerals shall be divided equally among my heirs, except rentals from oil and gas lease which shall be paid to Amanda Clark', and thereafter a bonus is given in consideration of the execution of an oil and gas lease on property covered by the terms of said will, held, that said bonus so received will be treated as 'rentals from oil and gas lease' as distinguished from 'oil, gas or other minerals.' "

The language of the will there under consideration affords no parallel to that here involved. In the instant case, by the terms of the condition the accrual of any right of the other devisees to share in the "gas, oil or valuable mineral and in all profits and royalties arising therefrom" is expressly made to depend upon the previous discovery thereof. The word "discover" has, in common acceptation, a definite meaning and denotes the ascertainment of actual existence. And that the testator in using the word "discovered" had reference to such mineral as was known to exist is made manifest by the word "said" used in the following language: "should said oil, gas or valuable mineral be produced, mined or sold or royalties paid thereon." So used, the effect thereof is to expressly limit the oil, gas or valuable mineral in contemplation to that which has been discovered. And since the right to share is made to rest on such, it excludes any theory that the right to share could antedate the actual discovery. Since it is admitted that no oil or gas has been discovered upon the premises it follows that the court erred in awarding plaintiffs judgments against defendant Antonia Cobb for pro rata parts of the bonus money by her received.

The decree of the trial court is affirmed to the extent same holds valid the corporate conveyances and quiets the title of the grantees thereunder, and is reversed to the extent same awards a money judgment against the defendant Antonia Cobb.