CLEMENTS et al. v. MOORE.

No. 34285. Nov. 13, 1951.

Rehearing Denied Dec. 4, 1951.

238 P. 2d 297.

Murphy & Firestone, Kingfisher, for plaintiffs in error.

Dan Mitchell, Enid, and J. Howard Lindley, Fairview, for defendant in error.

BINGAMAN, J. The question presented for determination by this appeal is whether, under the terms of the last will and testament of Ida A. Clements, deceased, her checking and savings accounts in the banks and certain grain belonging to her and stored in an elevator in the town of Hennessey, passed to her daughter Crystal B. Clements Moore, or became a part of the residue of her estate to be divided equally among her five children.

Ida A. Clements died on June 22, 1948, leaving surviving her five children, the four plaintiffs, Andrew Clements, Perry Clements, Roy Clements, and Martha Holmes, and the defendant, Crystal B. Clements Moore. By the terms of her last will, after devising to each of the above-named children certain parcels of real estate, she devised to the defendant, Crystal B. Clements Moore, all of her household goods, furniture, furnishings and equipment, particularly describing some of the household goods "and all such personal property of every kind or nature located in or about my said home, or any other home or place of abode that I may acquire, which is owned by me at the time of my death." She then provided that all of the rest, residue and remainder of her property and estate, "not disposed of hereinabove, I do hereby give, will, devise and bequeath to my five now living children", naming the plaintiffs and defendant.

This will was executed November 9, 1933. Thereafter, on October 26, 1942, she executed a codicil to said will in which she amended and amplified paragraph numbered VI of the will, by which she devised her household goods and personal property to her daughter, Crystal.

The pertinent parts of said codicil read as follows:

"in addition to the real estate and personal property devised and bequeathed to my daughter, Crystal, I do provide that the general bequest there contained to her of 'all personal property of every kind or nature located in or about my said home', or any home of mine, shall expressly include any automobile, any money, currency or coin, or travelers checks, or defense or war bonds or stamps, which belong to me, or in which I have any interest, and which are in or sometimes about my home, about my person, or in my custody or control, or in her custody or control, and I do give and bequeath all of the same to her. I do further provide that any personal property, which is issued in the name of or to a designated payee or owner, or is a subject of registered ownership, for example, checks, bonds, drafts, stocks, automobile, etc., in which I have, or it may be claimed I have, any interest or ownership by reason of having furnished a part, or all, of the original purchase price, or consideration therefor, but which is registered or issued to or in her name, or in our names jointly, or in my name, shall belong to and is here bequeathed to her, to be her sole separate property, and the same shall not be distributed under the residuary clause, paragraph numbered 'VII' of said Will."

When the estate was ready for distribution in the county court, plaintiff Perry Clements, who was one of the executors, petitioned the court to construe the will and to decree the moneys in the bank accounts, certain United States Government bonds, and the wheat, evidenced by warehouse receipts showing its storage, to be a part of the residue of the estate to be distributed to the five living children of the deceased, share and share alike. The county court distributed the bonds, the currency found in the possession of the decedent at the time of her death, and a portion of the wheat evidenced by warehouse receipts in the possession of the decedent at the time of her death, to Crystal B. Clements Moore, and distributed the bank deposits and the proceeds from the sale of certain wheat, evidenced by two certificates which had not been delivered to dece-

dent, to the five devisees under the residuary clause in the will. On appeal the district court gave the savings accounts and the wheat, evidenced by the two warehouse receipts, to Crystal B. Clements Moore. It held that the checking accounts constituted the residue of the estate to be distributed to all five children, in equal shares. Plaintiffs appeal from this judgment in so far as it gave the wheat and savings accounts to the defendant, and defendant cross-appeals from that portion of the judgment which placed the checking accounts in the residue of the estate.

Plaintiffs in this court contend that the language of the will and codicil, as above quoted, conclusively establish that it was the intent of the testator to give to her daughter, Crystal, only money, bonds and other personal property in the home, and that the bequest to Crystal did not include any bank accounts or the wheat in the Hennessey elevator, which had been deposited there by tenants of the deceased who had retained the warehouse receipts issued therefor, and had not delivered the same to deceased at the time of her death.

Defendant contends that the term "money", as used in the codicil, covered and included all bank deposits of the deceased and that the warehouse receipts issued for the wheat, although it had not been delivered to her, fell within the classification of checks, bonds, drafts, stocks, etc., referred to in the codicil.

We have many times held that the cardinal rule for the construction of wills is to ascertain the intent of the testator and give effect thereto, and that all rules are subordinated to the intent of the testator where that has been ascertained. Cunningham v. Fidelity National Bank of Oklahoma City, 186 Okla. 429, 98 P. 2d 57; Cobb v. Newman, 201 Okla. 318, 205 P. 2d 858. And our statutes on interpretations of wills, 84 O.S. 1941 §§155-158, provide that all parts of a will are to be construed in relation to each other and that the words therein used are to be taken in their ordinary sense, unless the clear intention to use them in another sense can be collected. When the will and codicil are construed according to these rules it appears that the contention of the plaintiffs must prevail.

It is true, as pointed out by the defendant, that the term "money", when used in a will, in its strict sense may include bank deposits. 69 C. J. p. 393, §1434; 57 Am. Jur. p. 897, §1354; Page on Wills (Perm. Ed.) vol. 3, p. 59, §974. But, in all these works it is further stated that the word "money" may have any meaning which the testamentary intent, as manifested by the will read in the light of proper evidence, imparts to it, or, as stated in Am. Jur. supra, that no general rules of any real value are deducible from the decisions, the solution of each case being dependent upon the particular language of the will involved and the facts and circumstances shown. Examination of the authorities discloses that in many instances "money" was held to include not only bank deposits but stocks, bonds and even real estate, in order to prevent intestacy as to a portion of the decedent's estate, and in all cases the meaning given it was based upon its use in relation to the other provisions of the will.

In the first portion of the codicil, above quoted, where the terms "money, currency or coin or traveler's checks or defense or war bonds or stamps" were bequeathed to the daughter, Crystal, the meaning is limited and confined by the further provisions "and which are in or sometimes about my home, about my person or in my custody or control or in her custody or control." We think that this language, when given a reasonable construction, indicated the intent of the testator to devise to her daughter, Crystal, only such portion of the property above specified which was in her home or in her actual possession or control, or in the actual possession and control of the daughter, which was the intent ex-

pressed in her will. It appears from the final report of the executors that at the time of her death, decedent had in her home and in her actual possession a substantial amount of government bonds, issued to her alone, and that there was also in her possession at the time of her death "E" bonds, aggregating at maturity, the value of $1,850, which were made payable to her or Crystal B. Moore. We think that it was this class of property which decedent intended to bequeath to Crystal by the codicil and that it did not include her bank accounts or wheat in the warehouses, or any other property of which she was constructively in possession. Nor did the bank accounts and wheat come under the second provision of the codicil, above quoted, which gave to Crystal checks, bonds, etc., in which she claimed an interest by reason of having furnished a part or all of the original purchase price or consideration therefor. Reasonably construed, it could hardly be said that she intended to include in that classification her bank deposits and the wheat in storage, since they were property, not acquired by purchase, but deposited for safekeeping in certain designated places.

The trial court evidently held that the savings deposit passed to the daughter Crystal under the codicil for the reason that the bank books evidencing such deposits were in the possession of the testatrix, in her home, at the time of her death. However, they do not, in our opinion, come within the terms of the codicil so as to pass the deposits represented by them to the daughter. It follows that the trial court erred in holding that the savings deposits and the wheat stored in the warehouse passed to the daughter under the provisions of the codicil.

The judgment of the trial court is modified to include in the residue of the estate the savings accounts of decedent in the Farmers & Merchants National Bank of Hennessey and the First National Bank of Hennessey, and the wheat stored at the Farmers Co-Operative Elevator of Hennessey, evidenced by warehouse receipts Nos. 6994 and 6917, and as so modified is affirmed.

HALLEY, V. C. J., and WELCH, DAVISON, and JOHNSON, JJ., concur. CORN, GIBSON, and O'NEAL, JJ., dissent.